IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

IN RE:

**VOLUNTARY DISCLOSURES IN**
**FIFTY-FIVE CLOSED CASES**

## THE FEDERAL PUBLIC DEFENDER'S OPPOSITION
## TO CRAIG FRYE'S MOTION TO INTERVENE

### INTRODUCTION

The United States Attorney, "the representative not of an ordinary party to a

controversy, but of a sovereignty"  whose interest in a criminal case "is not that it

shall win the case, but that justice shall be done" (*Berger v. United States*, 295 U.S.

78, 88 (1935)) has moved to disclose to various defendants grand jury materials and

certain information bearing on the credibility of former ATF Task Force Officer

Craig Frye.  He does so pursuant to the constitutional duty incumbent upon all

prosecutors to provide evidence favorable to a defendant  (*Brady v. Maryland*, 373

U.S. 83 (1963)) including evidence that impeaches a witness's credibility (*Giglio v.*

*United States*, 405 U.S. 150 (1972)); the continuing duty to "set the record straight"

when the prosecutor comes to know that "significant exculpatory or impeaching

material" has been withheld from a defendant (*Banks v. Dretke*, 540 U.S. 668, 675

(2004));  and the requirement that the government seek court approval for disclosure of grand jury materials. Fed. R. Crim. P. 6(e).

This Court has appointed the Federal Public Defender to represent the seventy-six convicted persons (in fifty-five cases) whose convictions and/or sentences may have been affected by the testimony or investigative conduct of Frye. The mission of the Federal Public Defender is to review the cases, assess Frye's role in the cases, determine whether relief may be warranted in light of information bearing on the credibility of Frye, and pursue that relief.

Frye seeks to stop this process before it even gets started.  By counsel, he has moved to intervene in the affected criminal cases and requests entry of an order barring disclosure by the United States of the information the United States Attorney has determined should be disclosed under *Brady* and *Giglio*.  Frye  argues that because an employment grievance panel, with some unspecified powers to gather evidence and take testimony, applying some unknown standard of proof, and after considering some unidentified evidence (subject to unknown evidentiary rules), determined that: 1) some of the *Brady*/*Giglio* information was "false" (Frye's motion at p. 4, para. 7); and 2) Frye should be reinstated as a Vinton police officer—albeit on probation—this Court should deprive these defendants of

information that may have caused them to be convicted and/or punished unjustly.

This extraordinary, baseless request should be denied for several reasons.

> **I.     There is no authority for the proposition that a private party, much less one with a vested interest in shielding his misconduct from judicial scrutiny, may intervene in a criminal case to interfere with a prosecutor's duty to make disclosures required by *Brady* and *Giglio*.**

As noted, *Brady* and *Giglio* require prosecutors to disclose evidence

favorable to a defendant including information that may be used to impeach a

witness.  This obligation extends to providing information that **could** prove

"advantageous" to a defendant. *Banks*, 540 U.S. at 691.  Moreover, the cases are

clear that the duty is non-delegable—the **prosecutor** must not only provide

information qualifying under *Brady* and *Giglio*, but also the "**individual**

**prosecutor** has a duty to learn of any favorable evidence known to the others acting

on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514

U.S. 419, 437 (1995) (emphasis added).  The duty also is enshrined in the ethical

rules governing the professional conduct of prosecutors. *See e.g.*, Va. Rule of Prof.

Conduct 3.8(d), requiring a "lawyer engaged in a prosecutorial function" to "make

timely disclosure to counsel for the defendant, or to the defendant if he has no

counsel, of the existence of evidence which the prosecutor knows tends to negate

the guilt of the accused, mitigate the degree of the offense, or reduce the punishment, except when disclosure is precluded or modified by order of a court."

One will search the cases in vain for a case holding that a police officer may "intervene" in a criminal case and interfere with a prosecutor's compliance with his obligations under *Brady* and *Giglio* and the ethical rules.  The contention is tantamount to saying that a police officer may force a prosecutor who does not believe that he can ethically sponsor the officer's testimony to call the officer as a witness.  Actually, in this case, Frye literally is saying that he should be permitted to testify in criminal trials and hearings and that prosecutors who have reservations about his credibility must hide impeachment information that might undermine his credibility.

To state that remarkable contention is to refute it.  Frye is no better than any other witness.  He can take the witness stand, swear to tell the truth, and subject himself to cross-examination, "the greatest legal engine ever invented for the discovery of truth."  *California v. Green*, 399 U.S. 149, 158 (1970).  If he can adequately explain the impeaching material or if the court determines that questions regarding that material are out of bounds, then so be it.  But under no circumstances should a court short-circuit the process by accepting as binding the one-sided assertions of an officer who has been terminated from the ATF Task Force,

4

suspended by his police department, recommended for probationary status by a

grievance panel and, notably, already has been the subject of one *Giglio* inquiry

resulting in Judge Conrad determining that the one item of impeaching information

before him had to be disclosed to defense counsel.  *See* Order dated October 26,

2009 in *United States v. Aaron Woods*, Case No. 7:09CR00043, Docket Entry 70

(WD Va. Oct. 26, 2009) (order requiring disclosure as *Giglio* information that Frye

lied to a Roanoke City police officer after being stopped on suspicion of driving

under the influence).

In a very real sense, Frye is arguing that he has some right to subvert the

truth-finding function of the judicial process.

Frye says that three courts have allowed nonparties to intervene in criminal

cases and contends that this fact supports his motion to intervene in this case. Those

cases, however, dealt with entirely different situations.  All three involved public

and press access to judicial proceedings and records: *United States v. Moussaoui*,

65 App'x 881 (4t Cir. 2003) (allowing press intervention to assert access to oral

argument and judicial records); *In re: Associate Press, Chicago Tribune Co. et.al.*,

162 F. 3d 503 (7th Cir. 1998) (allowing press intervention to challenge court's

sealing of judicial records); *United States v. Blankenship*, 79 F. Supp. 3d 613 (S.D.

W. Va. 2015) (granting press intervention to challenge gag order).  Citing these

cases in support of an argument that a disgraced police officer should be allowed to intervene in criminal cases so that he can shut off access to evidence that federal prosecutors have determined should be disclosed under *Brady* and *Giglio* reflects a profound misunderstanding of their holdings. "A responsible press has always been regarded as the handmaiden of effective judicial administration, especially in the criminal field. The press does not simply publish information about trials but guards against the miscarriage of justice by subjecting the police, prosecutors, and judicial processes to extensive public scrutiny and criticism." *Sheppard v. Maxwell*, 384 U.S. 333, 350 (1966). Attempts to intervene to shut off access to information—especially information deemed to be potentially exculpatory by the prosecutors—are just about the opposite of what the intervening press associations in the cases cited by Frye sought.

Also unavailing is Frye's offhand reliance on Federal Rule of Criminal Procedure 57(b) as authority for his right to intervene in this case. The provision starts with these words: "Procedure When There Is No Controlling Law." It goes on to allow district courts in those circumstances to regulate practice consistent with "federal law, these rules, and the local rules of the district court." Plainly, this provision does not allow a district court to ignore *Brady*, ignore *Giglio*, ignore the

ethical rules and silence a United States Attorney who wishes to do what the law requires.

In short, these are criminal cases. Our clients' liberty is at stake. There simply is no authority for the proposition that a police officer (a terminated ATF Task Force Officer and suspended police officer at that) should be allowed to meddle in the criminal proceedings because he is concerned that the truth may come out. As Judge Moon put it recently: "While DOJ policies and the Privacy Act are considerations, neither allows the Government to forego its constitutional obligations under *Brady*." *United States v. Burns*, Case No. 6:13 CR 22 (WD Va. 2016), Memorandum Opinion dated July 14, 2016 at p. 9, n. 5.[1]

## II. Even assuming that there is authority for Frye to intervene in these cases, the justification he cites—to prevent the dissemination of "false" impeachment information as found by an employment grievance panel—is wholly inadequate.

Frye contends that because a grievance panel (hereinafter "the panel") has found him to be truthful regarding allegations that he lied to prosecutors about *Brady/Giglio* matters, the allegations are "false" and therefore should not be disclosed to defense counsel. Citing no authority, he seems to argue that an

---

[1] Frye's concern about personal identifiers and tax records (standard provisions in discovery and grand jury disclosure orders in this district) are overblown. All counsel are subject to this Court's disclosure rules regarding such matters. Frye is no different from any other person who may become involved in a case.

7

employment grievance panel's determinations bind a United States Attorney

regarding his obligations under *Brady* and *Giglio* and bar inquiry into Frye's

credibility by a federal court or counsel representing persons who may be in prison

on account of the dishonest conduct of Frye.  As best as undersigned counsel can

tell, the argument is a deeply flawed *res judicata*/collateral estoppel argument that

goes like this:  the panel looked at this, decided in my favor, so no one else can look

further.

Under *res judicata*, "a final judgment on the merits bars further claims by

parties or their privies based on the same cause of action."  *Montana v. United

States*, 440 U.S. 147, 153 (1979).  The doctrine prevents relitigation of claims that

were decided in a prior proceeding involving the parties.  The related collateral

estoppel doctrine bars relitigation of issues decided in an earlier proceeding

involving the same parties or their privies.  *See generally Parklane Hosiery Co. v.

Shore*, 439 U.S. 322 (1979).

Plainly, neither doctrine applies in this situation.  Neither the United States

nor any of these defendants were parties to the grievance proceeding.  So none is

bound by any determinations made by the panel.  Tellingly, the panel itself seemed

to acknowledge this. The panel returned Frye to duty but placed him on

probationary status for one year, during which: "he must resolve his credibility

8

issues with the Offices of the Commonwealth's Attorney in order to allow him to provide required testimony in the courts of the 23rd Judicial Circuit and District. If, despite the best efforts of both Frye and the Town, the various Commonwealth's Attorneys refuse to have him participate in prosecutions, then at the end of twelve months, he can be subject to separation from the Town of Vinton Police Force." Exhibit 1 to Frye's motion.  The passage--hardly a ringing endorsement of Frye-- reflects the panel's recognition that prosecutors (and ultimately courts) make these calls about Frye's credibility—not the panel.

Here, the federal prosecutors have made that call.  Additionally, as noted, Judge Conrad has also made that call as to the one item of *Giglio* material placed before him.

Importantly, it is not at all clear that the grievance panel was even reviewing the same legal questions or nucleus of facts at issue in these criminal cases. According to Frye's motion as well as the panel letter attached to the motion, the sole issue in question at the panel hearing appears to have been whether there was evidence to support the Town of Vinton's decision to terminate Frye based on allegedly false statements made to the Office of the United States Attorney in giving *Giglio* responses in the spring of 2017.  Based on the grievance Frye filed, the panel concluded that Frye had acted in "good faith and with an honest belief he

was comporting with existing procedures as a Task Force Officer" (Motion at Exhibit 1) in providing the answers he did to the U.S. Attorney's *Giglio* questionnaire apparently on that one occasion, and should not have been fired.

The panel alludes to allegations made by the United States Attorney, but there is no indication in the decision whether these are the same matters that the United States Attorney has decided to disclose in these criminal cases.  For example, did the panel actually determine that Frye had no obligation to reveal the *Giglio* information that Judge Conrad had already ruled had to be disclosed?  Was the panel aware of the apparently substantial evidence supporting the U.S. Attorney's conclusions regarding Frye's credibility alluded to in the government's motion in these cases?

Because there is no indication in the panel decision that the issues the panel addressed were even the same matters that the United States Attorney has decided to disclose in these criminal cases, neither *res judicata* or collateral estoppel may be invoked to bar the disclosure.

In any event, it would be inappropriate to rely on the panel's determination for the basic reason that there is no assurance that whatever allegations it resolved it did so via procedural safeguards equivalent to those afforded defendants in federal court.  What information/evidence was presented to the panel?  Did the panel have

subpoena authority?  Who testified and did witnesses testify under penalty of

perjury?  What standard of proof applied? What evidentiary rules applied? Was the

United States Attorney's office present, or represented? One will not find the

answers to any of these basic questions in Frye's motion.  Instead, he baldly asserts

that the panel found some allegations (framed by him) to be false, and he labels

these findings "undisputed facts" (Motion at p. 4, para. 7).  One might ask:

undisputed by whom?  There is certainly reason to dispute these "facts," and it is

quite clear that the United States Attorney disputes these "facts."  Likewise

disputing these "facts" are the Town of Vinton and its Chief of Police—who have

suspended Frye and taken the matter to a Virginia Circuit Court where, presumably,

there will be a full hearing on the matter.

In sum, the panel's determination regarding Frye's employment has no

bearing on these criminal cases.  Frye wants this Court to give deference to, indeed

see itself bound by, the determinations of an employment grievance panel which

considered unspecified allegations, considered unspecified evidence, applied an

unspecified standard of proof, and reached a conclusion that recognized that Frye

has unresolved credibility issues.  This Court should deny that request and thereby

afford these defendants the constitutional protections dictated by *Brady* and *Giglio*

and their progeny.

**III.    By describing the supposedly false allegations against him in his motion to intervene (at p. 4, para. 7), Frye has waived any privacy interest he may have in shielding these matters from scrutiny by the court and disclosure to counsel for the defendants.**

Frye, as noted, makes several representations about determinations made by the grievance panel and contends, in particular, that the panel found several specific allegations bearing on his credibility to be "false." Motion at p. 4, para. 7.  He has, therefore, effectively waived any claim of confidentiality as to these matters on "privacy" or any other grounds. *Cf. United States v. Jones*, 696 F. 2d 1069, 1072 (4th Cir. 1982) ("Any voluntary disclosure by the client to a third party waives the [attorney-client] privilege not only as to the specific communication disclosed, but often as to all other communications relating to the same subject matter.").  He simply cannot have it both ways: give a one-sided (and potentially incomplete and misleading) account of specific findings by the panel and bar any inquiry into the validity of those supposed findings.

The answer to all of this is to let the truth-finding function of the federal judicial process play out with all the ordinary protections the court affords in any case to sensitive information regarding witnesses, if indeed there be any.

How many times has Frye said to a suspect, "tell it to the Judge?"  Frye does not want to tell it to the judge; he thinks he is special.  *Brady* does not apply to him. *Giglio* does not apply to him. No one may question his credibility.  No one may

12

even look at evidence bearing on his credibility. The "fundamental maxim that the public (in the words sanctioned by Lord Hardwicke) has a right to every man's evidence" (*United States v. Bryan*, 339 U.S. 323, 331 (1950) (quoting Dean Wigmore, citation omitted) does not apply to Frye.  He is wrong, and we ask this Court to say so.

## CONCLUSION

For the reasons stated, Frye's motion to intervene should be denied and the government's motion to disclose evidence should be granted.

Respectfully submitted,

By: /s/ *Larry W. Shelton*

LARRY W. SHELTON
Federal Public Defender
        for the Western District of Virginia
OFFICE OF THE FEDERAL PUBLIC DEFENDER
        FOR THE WESTERN DISTRICT OF VIRGINIA
210 First Street, Suite 400
Roanoke, Virginia  24011
(540) 777-0880

/s/ *Randy V. Cargill*

Assistant Federal Public Defender
VSB No. 23811

/s/ *Fay F. Spence*

Assistant Federal Public Defender
VSB No. 27906

13

/s/ *Christine Madeleine Lee*

Assistant Federal Public Defender
VSB No. 73565

/s/ *Allegra M.C. Black*

Assistant Federal Public Defender
VSB No. 46188

OFFICE OF THE FEDERAL PUBLIC DEFENDER
      FOR THE WESTERN DISTRICT OF VIRGINIA
210 First Street, Suite 400
Roanoke, Virginia  24011
(540) 777-0880


## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of May, 2018, I electronically filed and thus served the foregoing Opposition to the Motion to Intervene upon the United States Attorney and counsel for Craig Frye.

By: /s/ *Christine Madeleine Lee*
          Christine Madeleine Lee